DANIEL W. MCKAY (USB 8898)
**HEIDEMAN, MCKAY, HEUGLY, & OLSEN, LLC**
397 North Main Street
Spanish Fork, UT  84660
Telephone: (801) 798-8000
Facsimile: (801) 798-1670
Email:  dmckay@hmho-law.com
Attorney for Plaintiff

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re BART J. BROCKBANK<br>SSN:  \*\*\*-\*\*-0823<br>613 W. Sunrise Dr.<br>Highland, UT 84003<br><br>Debtor.<br><br>STERLING-McKAY, LLC<br>28 North 1200 East<br>Lindon, UT 84042<br><br>Plaintiff,<br><br>vs.<br><br>BART J. BROCKBANK<br>613 W. Sunrise Dr.<br>Highland, UT 84003<br><br>Defendant. | Case No.<br><br>Chapter 7 Adversary<br><br>Judge: _____ |

## COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

COMES NOW Plaintiff Sterling-McKay, LLC ("Sterling-McKay"), by and through

counsel undersigned, and hereby submits the following Complaint to Determine Non-

Dischargeability of Defendant's debt to Plaintiff.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §

1334 and 28 U.S.C. § 157(b)(2)(I).

## GENERAL ALLEGATIONS

2.    Plaintiff is a Utah limited liability company organized in accordance with the laws

of the State of Utah in April 2007.

3.    On or about April 27, 2007, Plaintiff received a Secured Promissory Note

(secured by Deed of Trust), from GLRFB, LLC, ("GLRFB") in consideration for an

investment made to GLRFB in the amount of $200,000.00. (A true and correct copy is

attached as Exhibit"A").

4.    GLRFB, LLC is now an expired Utah limited liability company last renewed in

May 2007. (See Exhibit "B").

5.    Defendant Bart J. Brockbank is/was a principal of GLRFB, LLC, was its

registered agent, and a manager, director, and treasurer of the limited liability company. (See

Exhibit "C"). Defendant received financial benefit and gain from monies invested with and

loaned to GLRFB.

6.    In April 2007, GLRFB held itself out to the public as an entity engaged in the

business of real estate development and construction.

7.     In April 2007, GLRFB, by and through its principal Bart J. Brockbank authorized agents on its behalf to solicit investments to fund and provide capitalization for its various projects and business endeavours.  Investments were sought from various individuals and entities, including but not limited to Plaintiff Sterling McKay, LLC.

8.     GLRFB through its principals and agents, including Bart J. Brockbank, represented that GLRFB had several commercial enterprises that were financially lucrative in the St. George area of Washington County, Utah, in Cedar City, Iron County, Utah, and in Utah County, Utah.

9.     GLRFB through its principals and agents, including Bart J. Brockbank, represented that GLRFB had "bought well" in various projects, that they had purchased real property below current market values, and were positioned to make a significant profit upon completion of those projects, but were in need of an immediate capital infusion in order to finance these ventures.

10.    GLRFB through its principals and agents, including Bart J. Brockbank, represented that the principals had significant equity in their personal residences and believed so much in the viability of these projects that they would personally guarantee investments made and secure said investments against their personal homes.

11.    GLRFB through its principals and agents, including Bart J. Brockbank, did not disclose to Plaintiff that monies were owed to prior investors and that Plaintiff's investment would be pooled and commingled with other investor funds to repay these prior debts and obligations.

12.     Defendant, nor any of the principals or agents of GLRFB were licensed by the State of Utah, or any other state or federal agency as investment advisers, agents, or broker-dealers.

13.     Defendant, nor any of the principals or agents of GLRFB provided an executive summary, offering circular, private placement memorandum, or prospectus concerning the investment made by Plaintiff.

14.     Upon information and belief, Defendant on behalf of GLRFB authorized payment of commissions to agents acting on his/its behalf as consideration for soliciting investments from Plaintiff.

15.     On May 1, 2007, Defendant Bart J. Brockbank did sign and deliver a document entitled Guaranty (attached hereto as Exhibit "D"), whereby Defendant personally pledged his interest in any personal, community, joint, or separate property to secure said investment made by Plaintiff.

16.     On or about May 3, 2007, Defendant Bart J. Brockbank (as well as his spouse Nanette G. Brockbank) did sign and deliver a Deed of Trust with respect to his primary residence located in Highland, Utah. (See Exhibit "E").

17.     The maturity date for Plaintiff's investment was October 2008, wherein the principal as well as the return of two (2%) percent per month for eighteen (18) months was to be repaid to Plaintiff.

18.     To date, Plaintiff's investment of $200,000.00 has not been returned nor has its interest been paid.

//

## FIRST CAUSE OF ACTION
(Exception to Discharge -- 11 U.S.C. § 523(a)(2)(A))

19.     Defendant scheduled a debt owing to Plaintiff that was incurred as a result of

material misstatements and fraudulent nondisclosures that were either made, or should have

been made to Plaintiff with respect to the solicitation of investment funds from Plaintiff.

20.     Specifically, Defendant, acting on behalf of GLRFB and its authorized agents,

represented that it had "bought well" in various real estate development and construction

projects, that they had purchased real property below current market values, and were

positioned to make a significant profit upon completion of those projects, but were in need of

an immediate capital infusion in order to finance these ventures.

21.     Defendant on behalf of GLRFB failed to disclose material facts, that it had

outstanding financial obligations owing to prior investors, such that it had no equity in the

Washington County project.

22.     Defendant on behalf of GLRFB failed to disclose material facts, that it intended to

pool and commingle Plaintiff's investment with other investor funds, and to use those

investments to repay prior investors, antecedent debts, and other business' obligations.

23.     Defendant on behalf of GLRFB failed to disclose material facts, that it paid

commissions to unlicensed agents, investment advisers, and/or broker-dealers, in order to

induce said agents to solicit investment funds from Plaintiff as well as other investors.

24.     This debt owed to Plaintiff is the type of debt excepted from discharge under 11

U.S.C. § 523(a)(2)(A) and therefore this Defendant is not entitled to discharge under 11

U.S.C. § 727.

## SECOND CAUSE OF ACTION
(Exception to Discharge -- 11 U.S.C. § 523(a)(4))

25.     Plaintiff realleges all assertions made prior and incorporates those allegations

herein.

26.     Defendant was in a superior position to know material facts relating to the

projects for which it was seeking investment funds from Plaintiff, concerning the financial

viability, timing horizon of completion, debt to equity ratios, and the number and amount of

prior obligations owing with respect to said projects.

27.     Defendant on behalf of GLRFB took and accepted Plaintiff's investment knowing

that it had or intended to pay commissions to unlicensed agents, investment advisers, and/or

broker-dealers, in order to induce said agents to solicit investment funds from Plaintiff, as

well as other investors.

28.     Defendant on behalf of GLRFB took and accepted Plaintiff's investment knowing

that it had or intended to pool and commingle Plaintiff's investment with other solicited

funds to repay prior investors that were owed monies from Defendant and GLRFB.

29.     Defendant on behalf of GLRFB took and accepted Plaintiff's investment but

failed to provide an accounting of how the investment funds loaned by Plaintiff were applied

and allocated.

30.     Defendant on behalf of GLRFB authorized unlicensed agents acting on his/its

behalf to solicit investments from Plaintiff, as well as other friends, acquaintances, and/or

family, and to approach those within their sphere of influence with promises of lucrative

returns.

31.    As an investor that loaned monies to Defendant, by and through his closely-held limited liability company, GLRFB, LLC, Defendant owed a duty of loyalty and care to Plaintiff to be truthful with disclosures, not to withhold material information, and to safeguard and appropriately invest the funds solicited from Plaintiff.

32.    This debt owed to Plaintiff is the type of debt excepted from discharge under 11 U.S.C. §§ 523(a)(4) and therefore this Defendant is not entitled to discharge under 11 U.S.C. § 727.

### THIRD CAUSE OF ACTION
(Exception to Discharge -- 11 U.S.C. § 523(a)(19))

33.    Plaintiff realleges all assertions made prior and incorporates those allegations herein.

34.    11 U.S.C. § 523(a)(19) provides in relevant part:

**(a)** A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual Defendant from any debt —
...;
**(19)**    that —

**(A)** is for —
**(i)** the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
**(ii)** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

**(B)** results, before, on, or after the date on which the petition was filed, from —
**(i)** any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
**(ii)** any settlement agreement entered into by the Defendant; or
**(iii)** any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the Defendant.

35.    Section 3(a)(47) of the Securities Exchange Act of 1934 in its definition section

reads:

> The term "securities laws" means the Securities Act of 1933, the Securities
> Exchange Act of 1934, the Sarbanes-Oxley Act of 2002, the Public Utility
> Holding Company Act of 1935 (15 U.S.C. 79a et seq.) [15 U.S.C.A. § 79 et seq.],
> the Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.), the Investment
> Company Act of 1940, the Investment Advisers Act of 1940, and the Securities
> Investor Protection Act of 1970 (15 U.S.C. 78aaa et seq.).

36.    Pursuant to 15 U.S.C.A. §77b(a)(1) of the Securities Act of 1933, ("Securities

Act"), any certificate of interest, participation in a profit-sharing agreement, or investment

contract is defined as a "security" subject to regulation by said Act.

37.    Section 77q(a) of the Securities Act provides that:

> It shall be unlawful for any person in the offer or sale of any
> securities... by the use of any means or instruments of transportation or
> communication in interstate commerce or by use of the mails, directly or
> indirectly:
>
> (1) to employ any device, scheme, or artifice to defraud, or
> (2) to obtain money or property by means of any untrue statement or a
>     material fact or any omission to state a material fact necessary in
>     order to make the statements made, in light of the circumstances
>     under which they were made, not misleading; or
> (3) to engage in any transaction, practice, or course of business which
>     operates or would operate as a fraud or deceit upon the purchaser.

38.    The investment which Plaintiff entered into with Defendant constitutes a

security as defined by the Securities Act.

39.    Defendant violated Section 77q(a) by making material misrepresentations

as to the security, solvency, and suitability of the investment as articulated previously.

40.    Defendant accomplished these violations by utilizing means of interstate

commerce such as money transfers, emails and telephone communications.

41.    In addition, Utah Code Ann. § 61-1-1, the Utah Uniform Securities Act, provides that:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly to:
>
> (1) Employ any device, scheme, or artifice to defraud;
> (2) Make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

42.    Defendant engaged in and authorized others to transact business as a broker-dealer and/or agent without being licensed to do so in violation of Utah Code Ann. § 61-1-3.

43.    Defendant did not register the security being offered as an investment to Plaintiff nor did the investment qualify as an exemption or an exception from registration, in violation of Utah Code Ann. § 61-1-1, et seq.

44.    Defendants violated Utah Code Ann. § 61-1-1, et seq. by making untrue statements as to the value of the investment being offered and failing to disclose material facts listed above and by making fraudulent statements and omissions as previously articulated herein.

45.    Upon information and belief, all of the statements articulated in Paragraphs 8 through 11, as well as 20 through 23, of this Complaint were false, fraudulent and misleading.

46.     This debt owed to Plaintiff would be the type of debt excepted from discharge

under 11 U.S.C. § 523(a)(19)(A); however 11 U.S.C. § 523(a)(19)(B) also requires that the

debt result from:

> (i) any judgment, order, consent order, or decree entered in any Federal or
> State judicial or administrative proceeding,
> (ii) any settlement agreement entered into by the Defendant; or
> (iii) any court or administrative order for any damages, fine, penalty,
> citation, restitutionary payment, disgorgement payment, attorney fee, cost, or
> other payment owed by the Defendant.

47.     Presently, this debt owed to Plaintiff is unliquidated and has not been reduced to

judgment, order, or decree as Defendant has since October 2008, induced Plaintiff to forbear

filing suit with promises to repay.

48.     Plaintiff has contacted Defendant's counsel to request that Defendant stipulate

and enter into a settlement agreement with Plaintiff with respect to this debt, but presently,

no such settlement agreement has been entered into.

49.     Section 523(a)(19)(B) does not address whether the Bankruptcy Court (in addition

to acting as the ultimate finder of fact as to non-dischargeability) may also function as the

Federal tribunal and determine liability for violations of state or federal securities laws.

50.     There appears to be a split amongst the circuits with no authoritative precedent in

this jurisdiction.

51.     Plaintiff would seek from this Court either a determination in this case as to

Defendant's liability with respect to violations of state or federal securities laws as alleged in

this Complaint; or alternatively, for relief from the automatic stay so that Plaintiff may

commence a federal or state court action to adjudicate liability on the securities violations'

causes of action there, and for a stay or abeyance on this Complaint to Determine Non-

Dischargeability of Debt proceeding until those claims can be adjudicated and a judgment, order, or decree entered therein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to issue a Judgment determining that Defendant's obligation to Plaintiff is not dischargeable, and for any and all other relief to which Plaintiff may be entitled.

DATED AND SIGNED this 25 day of March 2010.

HEIDEMAN, McKAY, HEUGLY, & OLSEN, LLC

DANIEL W. McKAY,
Attorney for Plaintiff

# EXHIBIT A

## SECURED PROMISSORY NOTE
## (SECURED BY DEED OF TRUST)

$ 200,000 .00          Provo, Utah County, Utah
April 30, 2007

    FOR VALUE RECEIVED, GLRFB, LLC, an Utah limited liability company ("*Borrower*"), agrees and promises to pay to the order of _Sterling McCay, LLC_ (**individually or entity**) or its successors and assigns ("*Lender*"), the sum of $ _200,000_ .00, with points totaling 2% (the "*Points*") per month, for eighteen (18) consecutive months , of the original principal balance the date hereof to be calculated on a 360-day year, both principal and points being payable to Lender at _28 North 1200 East Linden_, Utah 84042, or at such other place as Lender may designate.

    1.    Payments. Borrower shall make payments under this Secured Promissory Note (this "*Note*") as follows:

    1.1    Points Payment. Beginning on the day that is one month following the date of this Note, and on the same day of each and every month thereafter until the Maturity Date, monthly points accrue at the rate described above. Borrower shall make payments to Lender in the amount of all monthly points accrued and unpaid under this Note on or before the Maturity Date. The Points Payments shall be guaranteed for a period of twelve (12) months, regardless of any prepayment as provided for below.

    1.2    Maturity. Anything in this Note to the contrary notwithstanding, all outstanding principal and accrued and unpaid points and all other amounts due under this Note, the Deed of Trust (as defined in Section 5 below) and all other documents or instruments executed by Borrower in connection with the Loan (the "*Other Loan Documents*") shall be due and payable to Lender in full on the date that is eighteen (18) months from the date of this Note (the "*Maturity Date*") unless an extension is expressly permitted by the Lender in writing.

    2.    Application. All payments received by Lender under this Note shall be applied as follows: (a) first to any unpaid charges or amounts due under this Note, the Deed of Trust or the Other Loan Documents, other than points and principal accrued or outstanding under this Note; (b) second to accrued and unpaid points under this Note; and (c) third to the outstanding principal balance of this Note.

    3.    Prepayment. Borrower may prepay the principal amount or the guaranteed points under this Note in whole or in part without any premium or penalty, however, all prepayments of principal shall remain subject to the guaranteed Points Payment regardless of when the prepayment occurs.

    4.    Security. Payment of this Note is secured by, among other things, a **Deed of Trust with Security Agreement** of even date herewith (the "*Deed of Trust*") that encumbers certain real property located in Washington County, Utah (the "*Property*"). At the closing of the loan evidenced by this Note (the "*Loan*") and as a condition to Lender making the Loan to Borrower, Lender shall be issued an ALTA lender's policy of title insurance in the amount of the Loan insuring the Deed of Trust as a **first** priority lien against the Property subject only to such matters as are acceptable to Lender, including a subordination agreement, in its sole discretion, and with such endorsements as Lender may require (the "*Lender's Title Insurance Policy*").

-1-

5.    Default.

5.1    Events of Default. The existence or occurrence of any one or more of the following shall constitute an *"Event of Default"* under this Note:

5.1.1    Non-Performance under Note. Borrower's failure to comply timely and fully with any of the terms or provisions of this Note, including, without limitation, the failure to pay all amounts due when due, including, without limitation, the Points Payments and the final payment due on the Maturity Date; or

5.1.2    Non-Performance Under Deed of Trust. Borrower's failure to comply timely and fully with any of the terms or provisions of the Deed of Trust, including, without limitation, the failure to pay any amount when due or the occurrence of any *"Event of Default"* under the Deed of Trust; or

5.1.3    Non-Performance Under Other Loan Documents. Borrower's failure to comply timely and fully with any of the terms or provisions of the Other Loan Documents; or

5.1.4    Bankruptcy; Insolvency. (a) Borrower or any member of Borrower making a general assignment for the benefit of creditors; or (b) the filing by or against Borrower or any member of Borrower of a voluntary or involuntary petition or application for a custodian, as defined by the United States Bankruptcy Code, or for the appointment of a receiver; or (c) the commencement, under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, of proceedings for the relief of Borrower or any member of Borrower or for the composition or arrangement of a substantial portion of the obligations of Borrower, any member of Borrower or affecting the Property.

6.2    Default Interest. Upon the occurrence of an Event of Default, at the option of Lender without notice to Borrower, all amounts then unpaid under this Note, the Deed of Trust and the Other Loan Documents shall bear default interest at the rate of 25.00% per annum (the *"Default Interest Rate"*) commencing on the initial due date of the failed payment or performance constituting the default (*i.e.*, prior to any applicable notice or cure periods). All outstanding points shall be added to principal and compounded monthly until paid. Interest at the Default Interest Rate shall continue for so long as the Event of Default shall remain uncured and shall be due and payable immediately as a condition to the curing of such Event of Default.

7.3    Acceleration. In addition to all other rights and remedies Lender may have if an Event of Default shall occur, Lender, at its option without further notice to Borrower, may declare immediately due and payable the unpaid principal balance of this Note, the points due and interest, if any, accrued thereon together with all other sums owed by Borrower under this Note, the Deed of Trust and the Other Loan Documents.

8.    Remedies Cumulative. The remedies of Lender, as provided in this Note, the Deed of Trust and the Other Loan Documents, shall be cumulative and concurrent and may be pursued singly, successively or together, at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

9.    Attorney's Fees. If Lender brings suit on this Note, the Deed of Trust or any of the Other Loan Documents, or employs an attorney or incurs expenses to compel payment of any amounts due under this Note, the Deed of Trust or any of the Other Loan Documents or to defend the priority of the Deed of Trust or

otherwise enforce the provisions of this Note, the Deed of Trust or any of the Other Loan Documents, Borrower shall pay all attorneys' fees, costs and expenses actually incurred by Lender as a result thereof, including, without limitation: (a) attorneys' fees, costs and expenses incurred in appellate proceedings or in any action or participation in, or in connection with, any case or proceeding under Chapters 7 or 11 of the Bankruptcy Code or any successor thereto; and (b) attorneys' fees, costs and expenses incurred as a result of Lender's exercising its rights to cure any Event of Default or as a result of a foreclosure of the Deed of Trust, the granting of a deed in lieu thereof, or the holding of a trustee's sale thereunder.

10.     Loan Expenses. At the closing of Loan, Borrower shall pay or reimburse Lender for all costs incurred by Lender in connection with the loan evidenced by this Note (the *"Loan"*), including, without limitation, Lender's legal fees and expenses, the premium for Lender's Title Insurance Policy and all other costs of making and closing the Loan. During the term of this Note, Borrower shall pay for or reimburse Lender for all costs incurred by Lender in connection with any request by Borrower to renegotiate any of the terms of this Note, the Deed of Trust or any of the Other Loan Documents, approve any additional loan documents, any reasonable administration costs necessitated by Borrower's actions, interpretation of enforcement of this Note, the Deed of Trust or any of the Other Loan Documents, including, without limitation, attorney's fees and costs as provided in Section 9 above, appraisals, surveys, title searches, lien searches, recording costs and fees, escrow fees, title insurance premiums and charges, taxes and fees and costs incurred in the release and termination of security for the Loan.

11.     Notices. All notices that Lender or Borrower are required or permitted to give under this Note shall be given in the same manner as provided for the giving of notice under the Deed of Trust.

12.     Waivers. Borrower: (a) waives any homestead or exemption laws and right thereunder affecting the full collection of this Note; and (b) waives any and all formalities in connection with this Note to the maximum extent allowed by law, including (without limitation) demand, diligence, presentment for payment, protest and demand, and notice of extension, dishonor, protest, demand and nonpayment of this Note and any other cause of release or discharge other than actual payment in full of this Note. Borrower further expressly waives any right of set-off Borrower may have against Lender due to any default, or alleged default, by Lender under this Note or the Deed of Trust or otherwise and agrees that Borrower will make all payments required under this Note, the Deed of Trust and/or the Other Loan Documents without regard to any such claims (Borrower agreeing to pursue any such claims separately while continuing to make all required payments under this Note, the Deed of Trust and/or the Other Loan Documents).

13.     No Waiver by Lender. Lender shall not be deemed, by an act of omission or commission, to have waived any of its rights or remedies under this Note, the Deed of Trust or any of the Other Loan Documents unless such waiver is in writing and signed by Lender, and then only to the extent specifically set forth in writing. The acceptance by Lender of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of Lender's remedies under this Note, the Deed of Trust or any of the Other Loan Documents at that time or at any subsequent time or nullify any prior exercise of any such remedies without the express written consent of Lender, except as and to the extent otherwise provided by law. A waiver with reference to one event shall not be construed as continuing or as a bar to or waiver of any right or remedy as to a subsequent event.

14.     Severability. If any term or provision of this Note shall, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Note shall not be affected thereby, but such term or provision shall be reduced or otherwise modified by such court or authority only to the minimum extent necessary to make it valid and enforceable, and each term and provision of this Note shall

be valid and enforceable to the fullest extent permitted by law. If any term or provision cannot be reduced or modified to make it reasonable and permit its enforcement, it shall be severed from this Note and the remaining terms shall be interpreted in such a way as to give maximum validity and enforceability to this Note. It is the intention of Borrower that if any provision of this Note is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning that renders it valid.

15. Headings and Captions. The headings and captions in this Note are for convenience of reference only and shall in no way alter or modify the terms of this Note.

16. Time of the Essence. Time is of the essence of this Note and all provisions, obligations and conditions thereof. Whenever notice must be given, payment made, document delivered or an act done under this Note on a day that is not a Business Day, the notice may be given, payment made, document delivered or act done on the next following day that is a Business Day. As used in this Note, *"Business Day"* shall mean a day other than a Saturday, Sunday or a day observed as a legal holiday by the United States government, the State of Utah or Lender.

17. Governing Law. This Note and the Deed of Trust shall be governed by, and construed and enforced in accordance with, the internal substantive laws of the State of Utah (without reference to choice of law principles). Borrower hereby irrevocably submits exclusively to the process, jurisdiction, and venue of the courts of the State of Utah, Utah or Washington County, and to the process, jurisdiction and venue of the United States District Court of Utah, for purposes of suit, action or other proceedings arising out of or relating to this Note and/or the Deed of Trust and without limiting the generality of the foregoing hereby waives and agrees not to assert by way of motion, defense or otherwise in any such suit, action or proceeding any claim that any such party is not personally subject to the jurisdiction of the above-named courts, that suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

18. Negation of Partnership. Nothing in this Note or the Deed of Trust shall be construed to render the Lender in any way, or for any purpose, a partner, joint venturer or associate with Borrower, nor shall this Note be construed to authorize either Lender or Borrower to act for the other, except as expressly stated herein. The only relationship between Lender and Borrower is that of lender and borrower.

19. Maximum Rate of Interest. Any provision in this Note to the contrary notwithstanding, the total liability for payments of interest and payments in the nature of interest, including, without limitation, all charges, fees or any sums that may at any time be deemed to be interest by a court of competent jurisdiction, shall not exceed the amount Lender may lawfully collect. Borrower agrees to pay an effective rate of points and/or interest, which is the rate or rates stated in this Note or the sums payable hereunder plus any additional rate of interest resulting from the payment by Borrower of any other charges, fees, costs or expenses incident to this transaction that are deemed in the nature of interest under applicable law. If the total liability for payments of interest and payments in the nature of interest, including, without limitation, all charges, fees or other sums that may at any time be deemed to be interest, shall, for any reason whatsoever, result in an effective rate of interest that for any month or other interest payment period exceeds the amount Lender may lawfully collect, all sums in excess of those lawfully collectible as interest for the period in question automatically shall, without further notice to Borrower, be applied as a reduction of the then outstanding principal balance of this Note or any other amounts due under this Note or the Deed of Trust (other than interest) immediately upon receipt of such sums by Lender, with the same force and effect as if Borrower had specifically designated such excess sums to be so applied to the reduction of such principal balance or such other amounts due; provided, however,

-4-

that Lender may elect, at any time and from time to time by notice in writing to Borrower, to waive, reduce or limit the collection of any sums (or to refund to Borrower any sums collected) in excess of those lawfully collectible as interest rather than accept such sums on prepayment of the principal balance of this Note or as payment of such other amounts.

*[Remainder of Page Left Intentionally Blank]*

19.    WAIVER OF JURY TRIAL. BORROWER WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY BORROWER AND BORROWER ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.    BORROWER FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. BORROWER FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

BORROWER:

GLRFB, LLC,
an Utah limited liability company

By: _____
    Bart J. Brockbank, Manager

STATE OF UTAH          )
                       ) ss.
County of Utah         )

The foregoing instrument was acknowledged before me this 27th day of April, 2007, by Bart J. Brockbank, acting as the Manager of GLRFB, LLC, an Utah limited liability company, on behalf of the company.

_____
Notary Public

My commission expires:

9-1-08

MICHAEL TYMON
NOTARY PUBLIC • STATE of UTAH
9839 N. DORCHESTER DR.
CEDAR HILLS, UT 84062
COMM. EXPIRES 9-1-2008

-6-

# EXHIBIT B

Registered Principal Search                                                                Page 1 of 2



Search all of Utah.gov »

 **Utah** Department of **Registered Principal Search**
Commerce

?Help

## More Information

Go back to the search results

### Business Information

| | |
|---|---|
| **Name of Entity:** | GLRFB LLC |
| **Entity Type:** | Limited Liability Company |
| **Entity Number:** | 6205814-0160 |
| **Registration Date:** | 05/08/2006 |
| **State of Origin:** | |

### Address

6113 West Sunrise Drive , Highland UT 84003

### Status

| | |
|---|---|
| **Status:** | Expired |
| **Status Description:** | Failure to File Renewal |
| **This Status Date:** | 09/03/2008 |
| **Last Renewed:** | 05/07/2007 |
| **License Type:** | LLC - Domestic |
| **Delinquent Date:** | 05/08/2008 |

### Registered Agent

| | |
|---|---|
| **Registered Agent:** | Bart Johnson Brockbank |
| **Address Line 1:** | 6113 West Sunrise Drive |
| **Address Line 2:** | |
| **City:** | Highland |
| **State:** | UT |
| **Zip Code:** | 84003 |

### Additional Information

| | |
|---|---|
| **Duration Time:** | 99 |
| **Incorporated in Home State Date:** | |
| **NAICS Code:** | 5313 |
| **NAICS Title:** | 5313-Activities Related to Real Estate |
| **Stock Class 1 Amount:** | |
| **Stock Class 1 Type:** | |
| **Stock Class 2 Amount:** | |
| **Stock Class 2 Type:** | |

### With this information, you can...

Access Principal Information

If you would like to receive information on the principal individuals associated with this entity, click the button on the left. You will be assessed a **$1.00 fee** for this information.

https://secure.utah.gov/rps/rpsauth                                                      1/25/2010

Perform Another Search

Copyright © 2010 State of Utah - All rights reserved.

# EXHIBIT C

## Business Entity Search - Principals:

| Name | Type | City | Status |
|------|------|------|--------|
| GLRFB LLC | Limited Liability Company | Highland | Expired |

| Position | Name | Address | |
|----------|------|---------|--|
| Member | RAWKKS LLC | 6113 West Sunrise Drive | Highland UT 84003 |
| Manager | Bart Johnson Brockbank | 6113 West Sunrise Drive | Highland UT 84003 |
| Registered Agent | Bart Johnson Brockbank | 6113 West Sunrise Drive | Highland UT 84003 |
| Manager | Cristian Sean Foote | 6017 West 11760 North | Highland UT 84003 |

| Position | Name | Street Address | City | State | Zip Code |
|----------|------|----------------|------|-------|----------|
| Registered Agent | BART BROCKBANK | 6113 W SUNRISE DR | Highland | UT | 84003 |
| Director | BART J BROCKBANK | 6113 WEST SUNRISE DR | HIGHLAND | UT | 84003 |
| Treasurer | BART J BROCKBANK | 6113 WEST SUNRISE DR | HIGHLAND | UT | 84003 |
| Director | SEAN FOOTE | 6017 W 11760 N | Highland | UT | 84003 |
| Director | JEFF GLINES | 1415 WEST LAKE CIRCLE | SAINT GEORGE | UT | 84790 |

Additional Principals on file at the Division of Corporations: No

### Business Information

| | |
|--|--|
| Name of Entity: | CREEKSIDE OWNERS ASSOCIATION |
| Entity Type: | Corporation |
| Entity Number: | 6564690-0140 |
| Registration Date: | 04/09/2007 |
| State of Origin: | |

| Position | Name | Street Address | City | State | Zip Code |
|----------|------|----------------|------|-------|----------|
| Member | BART J BROCKBANK | 6113 WEST SUNRISE DRIVE | Highland | UT | 84003 |
| Member | SEAN FOOTE | 6017 W 11760 N | American Fork | UT | 84003 |
| Member | JEFF GLINES | 1415 S LAKE CIRCLE | Saint George | UT | 84790 |
| Registered Agent | JASON S KNAPP | 11982 HERSEY PARK COURT | Riverton | UT | 84065 |
| Member | JASON S KNAPP | 11982 HERSEY PARK COURT | Riverton | UT | 84065 |

Additional Principals on file at the Division of Corporations: No

### Business Information

| | |
|--|--|
| Name of Entity: | LIBERTY VENTURES GROUP, LLC |
| Entity Type: | Limited Liability Company |
| Entity Number: | 5868264-0160 |

**Registration Date:**　　03/25/2005

**State of Origin:**

| Position | Name | Street Address | City | State | Zip Code |
|---|---|---|---|---|---|
| Member | Bart J Brockbank | 807 East Pacific Drive Ste D | American Fork | UT | 84003 |
| Registered Agent | Bart J Brockbank | 807 East Pacific Drive Ste D | American Fork | UT | 84003 |
| Manager | Bart J Brockbank | 807 East Pacific Drive Ste D | American Fork | UT | 84003 |
| Member | Sean Foote | 807 Pacific Drive Ste D | American Fork | UT | 84003 |
| Manager | Sean Foote | 807 Pacific Drive Ste D | American Fork | UT | 84003 |
| Member | John Mendenhall | 807 East Pacific Drive Ste D | American Fork | UT | 84003 |
| Member | Nathan R Walker | 807 East Pacific Drive Ste D | American Fork | UT | 84003 |

**Additional Principals on file at the Division of Corporations: No**

## Business Information

**Name of Entity:**　　BJNS LLC

**Entity Type:**　　Limited Liability Company

**Entity Number:**　　6672559-0160

**Registration Date:**　　07/05/2007

**State of Origin:**

| Position | Name | Street Address | City | State | Zip Code |
|---|---|---|---|---|---|
| Member | BART J BROCKBANK | 807 E PACIFIC DR, STE D | American Fork | UT | 84003 |
| Registered Agent | SEAN KINGI BROWN | 807 E PACIFIC DR STE D | American Fork | UT | 84003 |
| Member | SEAN KINGI BROWN | 807 E PACIFIC DR STE D | American Fork | UT | 84003 |
| Member | ROBERT CLAUSON | 807 E PACIFIC DR, STE D | American Fork | UT | 84003 |
| Member | CHRISTIAN SEAN FOOTE | 807 E PACIFIC DR STE D | American Fork | UT | 84003 |

**Additional Principals on file at the Division of Corporations: No**

## Business Information

**Name of Entity:**　　OAKS AT LONE PEAK, LLC, THE

**Entity Type:**　　Limited Liability Company

**Entity Number:**　　6749599-0160

**Registration Date:**　　09/13/2007

**State of Origin:**

| Position | Name | Street Address | City | State | Zip Code |
|---|---|---|---|---|---|
| President | BART J BROCKBANK | 606 S 1250 W | Lehi | UT | 84043 |
| Registered Agent | BART J BROCKBANK | 606 S 1250 W | Lehi | UT | 84043 |
| Officer | NANETTE G BROCKBANK | 606 S 1250 W | Lehi | UT | 84043 |

**Additional Principals on file at the Division of Corporations: No**

## Business Information

| | |
|---|---|
| Name of Entity: | BROCKBANK ACCOUNTING & PROFESSIONAL SERVICES INC. |
| Entity Type: | Corporation |
| Entity Number: | 5072380-0142 |
| Registration Date: | 02/19/2002 |
| State of Origin: | |

# EXHIBIT D

# GUARANTY

This Guaranty (this *"Guaranty"*) is being executed and delivered as of May 1, 2007 (the *"Effective Date"*), in consideration of, and as a condition and inducement to,  (*"Lender"*), to make a loan to GLRFB, LLC, an Utah limited liability company (*"Borrower"*), in the amount of $915,000.00 (the *"Loan"*), by BART J. BROCKBANK, an individual residing in the State of Utah (*"Guarantor"*), which agrees with and for the benefit of Borrower as follows:

1.  **Obligations Guaranteed.** Guarantor hereby absolutely and unconditionally guarantees to Lender, and independently assumes liability to Lender, without any requirement whatsoever of resort by Lender to Borrower or any other party of the following (collectively, the *"Obligations"*):

    1.1  **Loan Agreement.** The performance of each and every obligation of Borrower, and the payment of all amounts to be paid by Borrower, under the Loan Agreement to be executed by Borrower in connection with the Loan (the *"Loan Agreement"*); and

    1.2  **Expenses.** Guarantor acknowledges that the Borrower's obligations under the Loan Agreement include obligations of Borrower to pay all of Lender's reasonable attorneys' fees, costs and expenses incurred as a result of Lender bringing suit under the Loan Agreement or employing an attorney or incurring expenses to compel payment of any amounts due under the Loan Agreement.

2.  **Nature of Guarantor's Liability; No Exoneration or Subrogation.**

    2.1  **Payment and Performance.** This Guaranty is a continuing, absolute and unconditional guaranty of payment and performance and is not merely a guaranty of collection. The liability of Guarantor hereunder is independent of the Obligations and of the liabilities of any other guarantors of the Obligations.

    2.2  **Waiver of Notice, Presentment, Etc.** Guarantor hereby fully waives all requirements, if any, of demand, presentment, diligence, protest and notice of dishonor and all other notices of every kind or nature (including those of any action or inaction on the part of Borrower, Lender or anyone else) with respect to the Obligations.

    2.3  **Consent.** Guarantor hereby consents to:

        2.3.1  any and all alterations, including, without limitation, renewals, extensions, increases, reductions, releases and cancellations, that may hereafter be made to any of the Obligations;

        2.3.2  any and all such alterations, impairments, suspensions, terminations and expirations (including, without limitation, all such as might result from alterations of the type described in Section 2.3.1 above or from any action or inaction of the type described in Section 2.3.3 below) of the remedies or rights of Lender against Borrower, any other guarantors or any other person with respect to any of the Obligations; and

        2.3.3  any and all action or inaction on the part of Lender, including, without limitation, election of remedies, amendment, substitution, surrender, release, forfeiture, enforcement, foreclosure and sale, in its sole and unfettered judgment and discretion, with respect to any security (or any part thereof) now held or hereafter acquired by Lender for the performance of the Obligations, even though any rights or defenses that Guarantor may otherwise have, by subrogation, reimbursement, indemnification or otherwise, against Borrower, Lender, any of the other guarantors or others may be diminished, destroyed or otherwise adversely affected by any such alteration, impairment, suspension, termination, expiration, action or inaction, all to the end that Guarantor shall not be exonerated, released or discharged from their absolute,

unconditional and independent liabilities hereunder by any such alteration, impairment, suspension, termination, expiration, action or inaction.

2.4     Waivers. Guarantor waives any right (pursuant to Utah Code Annotated or any other law, rule, arrangement or relationship) to require or compel Lender to: (a) proceed against Borrower or any other guarantor; (b) proceed against or exhaust any security for the Obligations; or (c) pursue any other remedy in Lender's power whatsoever, and failure of Lender to do any of the foregoing shall not exonerate, release or discharge Guarantor from its absolute, unconditional and independent liabilities to Lender hereunder.

2.5     Prosecution. Lender may bring and prosecute a separate action against Guarantor to enforce Guarantor's liabilities hereunder, regardless of whether any action is brought against Borrower, any of the other guarantors of the Obligations or any other person and regardless of whether Borrower, any other guarantor or any other person is joined in any such action or actions. Nothing shall prohibit Lender from exercising its rights against Guarantor, Borrower, the security, if any, for the Obligations, any other guarantor and any other person simultaneously, jointly and/or severally. Guarantor shall be bound by each and every ruling, order and judgment obtained by Lender against Borrower with respect to the Obligations, regardless of whether Guarantor is a party to the action or proceeding in which such ruling, order or judgment is issued or rendered. The terms of this Guaranty may be enforced as to any one or more breaches either separately or cumulatively. Each and every default hereunder shall give rise to a specific cause of action hereunder and separate suits may be brought hereunder as each cause of action arises.

2.6     No Discharge. Guarantor shall not be discharged, released or exonerated, in any way, from its absolute, unconditional and independent liabilities hereunder, even though any rights or defenses Guarantor may have against Borrower, Lender, any other guarantors or others may be destroyed, diminished or otherwise affected by:

2.6.1     any declaration by Lender of a default by Borrower with respect to any of the Obligations;

2.6.2     the exercise by Lender of any rights or remedies against Borrower, any of the other guarantor or any other person;

2.6.3     the failure of Lender to exercise any rights or remedies against Borrower, any other guarantor or any other person; or

2.6.4     the sale or enforcement of, or realization upon any security for any of the Obligations.

2.7     No Subrogation. Until all Obligations have been performed in full, Guarantor shall not have any right to subrogation, and until such time Guarantor shall not assert: (a) any right to enforce any remedy Lender now has or may hereafter have against Borrower; and (b) any benefit of, and any right to participate in, any security now or hereafter held by Lender.

2.8     Waiver of Defenses. To the full extent permitted by law, Guarantor waives: (a) any right to plead or assert any election of remedies; and (b) the defense of the statute of limitations in any action to enforce this Guaranty.

2.9     Settlement. Guarantor shall not be discharged, released or exonerated, in any way, from its absolute, unconditional, and independent liabilities hereunder, by the voluntary or involuntary

participation by Borrower in any settlement or composition for the benefit of Borrower's creditors either in liquidation, readjustment, receivership, bankruptcy or otherwise.

3.      Subordination of Guarantor's Claims. Any indebtedness of Borrower now or hereafter held by Guarantor is hereby subordinated to the Obligations; and such indebtedness of Borrower to Guarantor, if Lender so requests, shall be collected, enforced and received by Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations but without reducing or affecting in any manner the absolute, unconditional and independent liabilities of Guarantor under this Guaranty.

4.      Guarantors Representations and Warranties. Guarantor hereby represents and warrants to Lender that:

4.1      Guarantor is not in violation of any law, statute, regulation, ordinance, judgment, decree, order, rule or regulation of any court or governmental authority applicable to it if such noncompliance would have a material adverse effect upon Guarantor, this Guaranty, any of the transactions contemplated hereby, or Guarantor's ability to perform its obligations hereunder;

4.2      The execution and delivery by Guarantor of this Guaranty and the consummation of the transactions contemplated hereby do not, and the performance of Guarantor's obligations hereunder will not: (a) conflict with or result in a violation or breach of or a default under: (i) any agreement, lease, mortgage, indenture or any other contract or instrument to which Guarantor is a party or by which it or any of its property is bound; or (ii) any law, statute, ordinance, rule, regulation, writ, order, judgment or decree to which Guarantor is a party or by which it or any of its property is bound; nor (b) result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Guarantor's properties or assets;

4.3      There are no actions, suits, restraining orders, injunctions, investigations, proceedings or inquiries at law or in equity, pending or threatened, by or before any judicial, quasi-judicial, legislative or administrative court, agency or authority, or any arbitrator, nor to the best of Guarantor's knowledge any basis for any of the foregoing, in which an unfavorable determination, ruling or finding would materially adversely affect the validity or enforceability of this Guaranty, or any of the transactions contemplated hereby, or the business, financial condition or assets of Guarantor;

4.4      Guarantor has a direct or indirect ownership interest in Borrower, and Guarantor will benefit by Lender making the Loan to Borrower. The assumption by Guarantor of its obligations hereunder will result in direct financial benefit to Guarantor; and

4.5      Borrower shall make full and prompt payment of amounts due under the Obligations when and as the same shall become due, and Borrower shall fully and promptly perform all other obligations, if any, required to be performed by Borrower pursuant to the Environmental Indemnity.

5.      Costs of Enforcement. Guarantor agrees to indemnify Lender for all costs and expenses, including, without limitation, all reasonable attorneys' fees whether or not legal action be instituted, incurred or paid by Lender in enforcing this Guaranty.

6.      Benefit. This Guaranty may be assigned or transferred in whole or in part by Lender and the benefit of this Guaranty shall automatically pass with a transfer or assignment of Lender's rights under and interests created by or in connection with the Loan Documents (or any portion thereof) by Lender. All references to Lender herein shall be deemed to include any successors or assignees of Lender. This Guaranty is also made for the benefit of any person claiming by, through or under Lender.

7.    Notices. Any notice, demand, request, consent, approval or communication (collectively "*Notice*") required or permitted under this Guaranty shall be in writing and shall be personally delivered or sent by certified mail, with return receipt requested, postage prepaid or sent by nationally recognized overnight courier service (*e.g.*, Federal Express or UPS), addressed as follows.

Lender:    _____
          _____
          _____
          _____

Guarantor:    Ban J. Brockbank
            _____
            _____

Notice given in accordance with the terms hereof shall be deemed given and received on the date of receipt if personally delivered or sent by fax, upon the date three Business Days after posting if transmitted by mail or one Business Day after depositing such Notice with an overnight carrier. Any party hereto may change the address for receiving Notice by notice sent in accordance with the terms of this Section 7. The inability to deliver a Notice because of a changed address of which no Notice was given, or rejection or other refusal to accept any Notice, shall be deemed to be receipt of the Notice as of the date of such inability to deliver, rejection or refusal to accept. Any Notice to be given by any party hereto may be given by legal counsel for such party; however, notice to a party's legal counsel without notice directly to such party shall not be deemed notice to such party.

8.    Successors. All of the terms and provisions of this Guaranty shall be binding upon, and inure to the benefit of, and be enforceable by, the respective successors and assigns of the parties hereto, regardless of whether so expressed. As used in this Guaranty, "*Borrower*" shall include any successor or assignee of the Borrower named above

9.    Entire Agreement. This Guaranty, together with all of the documents executed in connection with the Loan, and all other agreements collateral thereto, constitute the entire agreement and understanding and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof.

10.    Headings. The headings in this Guaranty are for the purpose of reference only and shall not limit or otherwise affect the terms or provisions hereof.

11.    Changes, Waivers, Etc. Neither this Guaranty nor any term or provision thereof may be changed, waived, discharged or terminated except by an instrument in writing executed by the party against which enforcement of the change, waiver, discharge or termination is sought.

12    Governing Law. This Guaranty shall be governed by, and construed and enforced in accordance with, the internal substantive laws of the State of Utah (without reference to choice of law principles). Guarantor hereby irrevocably submits exclusively to the process, jurisdiction, and venue of the courts of the State of Utah, Washington or Utah County, and to the process, jurisdiction and venue of the United States District Court of Utah, for purposes of suit, action or other proceedings arising out of or relating to this Guaranty and without limiting the generality of the foregoing hereby waives and agrees not to assert by way of motion, defense or otherwise in any such suit, action or proceeding any claim that any such party is not personally subject to the jurisdiction of the above-named courts, that suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

13.   WAIVER OF JURY TRIAL.  GUARANTOR WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION.  THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTOR AND GUARANTOR ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  GUARANTOR FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY GUARANTOR'S OWN FREE WILL, AND THAT GUARANTOR HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL  GUARANTOR FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

14.   Severability.  If any term or provision of this Guaranty shall, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Guaranty shall not be affected thereby, but such term or provision shall be reduced or otherwise modified by such court or authority only to the minimum extent necessary to make it valid and enforceable, and each term and provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.  If any term or provision cannot be reduced or modified to make it reasonable and permit its enforcement, it shall be severed from this Guaranty and the remaining terms shall be interpreted in such a way as to give maximum validity and enforceability to this Guaranty.  It is the intention of the parties hereto that if any provision of this Guaranty is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid.

*[Remainder of Page Intentionally Blank]*

15. **Time of the Essence; Sole Discretion.** Time is of the essence of this Guaranty and all provisions, obligations and conditions thereof. Whenever notice must be given, payment made, document delivered or an act done under this Guaranty on a day that is not a Business Day, the notice may be given, payment made, document delivered or act done on the next following day that is a Business Day. As used in this Note, *"Business Day"* shall mean a day other than a Saturday, Sunday or a day observed as a legal holiday by the United States government, the State of Utah or Lender. As used in this Agreement, *"sole discretion"* shall mean sole, absolute, unfettered and unreviewable judgment and discretion without regard to whether such judgment or discretion is exercised reasonably or unreasonably.

16. **Joint and Several Liability.** The liability of each person named as Guarantor under this Guaranty shall be personal and joint and several and shall bind all property of Guarantor, including, without limitation, all community property and sole and separate property of Guarantor.

By: _____
BART J. BROCKBANK, Individually

STATE OF UTAH        )
                     ) ss.
County of _____ )

The foregoing instrument was acknowledged before me this 1st day of May, 2007, by Bart J. Brockbank, individually.

_____
Notary Public

My commission expires:

9-1-08

MICHAEL TYMON
NOTARY PUBLIC • STATE of UTAH
9889 N. DORCHESTER DR.
CEDAR HILLS, UT 84062
COMM. EXPIRES 9-1-2008

EXHIBIT "B"

Shaun Rothwell as to a 23.77% interest, Joe Strom as to a 23.77% interest, Mike Amidan
as to a 10.93% interest, Jeff Bradford as to a 3.28% interest, David Stewart as to a 5.46%
interest, Jared Rothwell as to a 10.93% interest and Sterling Snow as to a 21.86%
interest.

# EXHIBIT E

ENT 110864:2008 PG 1 of 17
RANDALL A. COVINGTON
UTAH COUNTY RECORDER
2008 Oct 09 11:39 am FEE 42.00 BY TO
RECORDED FOR HORIZON TITLE INSURANCE
ELECTRONICALLY RECORDED

**RECORDING REQUESTED BY:**

# Courtesy Recording

_____

_____

_____

_____

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

### DEED OF TRUST
### (FIRST LIEN POSITION)

THIS DEED OF TRUST is dated as of May 3, 2007. among BART J. BROCKBANK, individually, whose address is 6113 W. 11630 N., Highland, UT 84003 _____ (referred to below as "Trustor"); and Nanette G. Brockbank ROST INVESTMENTS, LLC, a Utah limited liability company whose address is 807 East Pacific Drive, Suite C, American Fork, Utah 84003 (referred to as "Beneficiary"); and Stephen Quesenberry whose address is River View Plaza, Ste 300, 4844 N. 300 W., Provo, UT 84604 (referred to below as "Trustee")

1.  **Conveyance and Grant**. For valuable consideration, Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, for the benefit of Beneficiary as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenance; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters (the "Real Property"), located in Utah County, State of Utah:

Lot 24, HIGHLAND HEIGHTS PLAT "A", according to the official plat thereof, filed on February 4, 2003 as Entry No. 17242:2003 of the Official Records of the Utah County Recorder.

1.1.  The Real Property address is 6113 W 11630 N, Highland The Real Property tax identification number is 41:527:0024 _____.

1.2.  Trustor irrevocably grants, conveys and assigns to Trustee in Trust, with power of sale, the Real Property, together with: (a) all buildings, structures, improvements, fixtures and built-in equipment and appliances now or hereafter placed thereon; (b) all present and future leases and all subleases executed with respect to the Real Property; (c) all rents, issues, profits, revenues and income thereof including all revenue, gross or net receipts, payments, and income derived from any business activity conducted by or on behalf of Trustor on the Real Property ("Property Income"); (d) all easements, licenses, rights, minerals, oil and gas, appurtenances, abandoned or vacated streets, alleys and rights-of-way, privileges and interests now or hereafter attached to or used in connection with the Real Property; (e) all policies of insurance on the Real Property and/or personal property located on the Real Property (the "Personal Property") and proceeds thereof and all awards and proceeds of any condemnation or like proceeding affecting the Real and/or Personal Property; and (f) all water, drainage, irrigation and electrical or water user's rights appurtenant or related to the Real Property (hereafter together with the Real Property and any Personal Property collectively referred to as the "Property"). All components of the Property are deemed encumbered hereby as an entity and are declared to be part of the real estate whether or not physically attached to the Real Property. THIS DEED OF TRUST, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE TERMS DESCRIBED BELOW.

2. **Trustor's Representations and Warranties.** Trustor warrants that: (a) this Deed of Trust is executed at Trustor's request and not at the request of Beneficiary; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Trustor on a continuing basis information about Trustor's financial condition; (e) Beneficiary has made no representation to Trustor about Trustor (including without limitation the creditworthiness of Trustor); (f) any and all obligations Trustor may have incurred in connection with the Property are current and without default; and (g) Trustor hereby releases, waives, and relinquishes all exemptions and homestead rights which may exist with respect to the Property.

3. **Trustor's Waviers.** Trustor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Beneficiary from bringing any action against Trustor, including a claim for deficiency to the extent Beneficiary is otherwise entitled to a claim for deficiency, before or after Beneficiary's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

4. **Payment and Performance.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Beneficiary all indebtedness secured by this Deed of Trust as it becomes due, and Trustor and Trustor shall strictly perform all their respective obligations under the Amended and Restated Operating Agreement of GLRFB, LLC, a Utah limited liability company, dated the ____ day of _____, 2007, the Secured Promissory Note, the Loan Agreement, this Deed of Trust, and the Related Documents. The obligations of GLRFB, LLC are secured by this Deed of Trust.

5. **Possession and Maintenance of the Property.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

   5.1. **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of the Property or to other limitations on the Property. This instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, U.C.A. § 57-1-19, et seq.

   5.2. **Duty to Maintain, Preserve and Repair.** All buildings, structures and other improvements which are presently erected and in the future are to be erected upon the Premises, shall, at Trustor's own cost and expense, be kept in good and substantial repair, working order and condition, and Trustor shall from time to time make, or cause to be made, all necessary and proper repairs, replacements, improvements and betterments thereto. Trustor shall not remove, demolish, materially alter, discontinue the use of, sell, transfer, assign, hypothecate or otherwise dispose of to any person any part of the Trust Property without the prior express written consent of Beneficiary, except that Trustor shall from time to time make such substitutions, additions, modifications and improvements as may be necessary and as shall not impair the structural integrity, operating efficiency and economic value of the Trust Property. All alterations, replacements, renewals or additions made pursuant to this paragraph shall automatically become and constitute a part of the Trust Property and shall be covered by the lien of this Deed of Trust. Trustor shall not do, and shall not permit to be done, any act which may in any way impair or weaken the security under this Deed of Trust.

   5.3. **Compliance With Environmental Laws.** Trustor represents and warrants to Beneficiary that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Beneficiary in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Beneficiary in

2

writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinance, including without limitation all Environmental Laws. Trustor authorizes Beneficiary and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Beneficiary may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Beneficiary shall be for Beneficiary's purposes only and shall not be construed to create any responsibility or liability on the part of Beneficiary to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Beneficiary for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Beneficiary against any and all claims, losses, liabilities, damages, penalties, and expenses which Beneficiary may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Beneficiary's acquisition of any interest in the Property, whether by foreclosure or otherwise.

5.4. <u>Nuisance, Waste.</u> Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Beneficiary's prior written consent.

5.5. <u>Removal of Improvements.</u> Trustor shall not demolish or remove any improvements from the Real Property without Beneficiary's prior written consent. As a condition to the removal of any improvements, Beneficiary may require Trustor to make arrangements satisfactory to Beneficiary to replace such improvements with improvements of at least equal value.

5.6. <u>Beneficiary's Right to Enter.</u> Beneficiary and Beneficiary's agents and representatives may enter upon the Real Property at all reasonable times to attend to Beneficiary's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

5.7. <u>Compliance with Governmental Requirements.</u> Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trust has notified Beneficiary in writing prior to doing so and so long as, in Beneficiary's sole opinion, Beneficiary's interests in the Property are not jeopardized. Beneficiary may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Beneficiary, to protect Beneficiary's interest.

5.8. <u>Duty to Protect.</u> Trustor agrees neither to abandon nor leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

6. <u>Due on Sale – Consent by Beneficiary.</u> Beneficiary may, at Beneficiary's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Beneficiary's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or

by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.

7.  **Taxes and Liens.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

7.1.  **Payment.** Trustor shall pay when due (and in all events 10 days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Beneficiary under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

7.2.  **Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Beneficiary's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Beneficiary, deposit with Beneficiary cash or a sufficient corporate surety bond or other security satisfactory to Beneficiary in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Beneficiary and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Beneficiary as an additional obligee under any surety bond furnished in the contest proceeding.

7.3.  **Evidence of Payment.** Trustor shall upon demand furnish to Beneficiary satisfactory evidence of payment of the taxes, charges, liens, encumbrances or assessments and shall authorize the appropriate governmental official to deliver to Beneficiary at any time a written statement of the taxes and assessments against the Property.

7.4.  **Change in Laws.** During the term of this Deed of Trust, in the event of the passage after the date of this Deed of Trust of any law of the State of Utah, or any other governmental entity, changing in any way the laws now in force for the taxation of trust deeds, or debts secured thereby, for state or local purposes, or the manner of the operation of any such taxes, so as to affect the interest of Beneficiary, then and in such event, Trustor shall bear and pay the full amount of such taxes, provided that if for any reason payment by Trustor of any such new or additional taxes would be unlawful or if the payment thereof would constitute usury or render the indebtedness secured hereby wholly or partially usurious under any of the terms or provisions of the obligation secured hereunder, or otherwise, Beneficiary may, at Beneficiary's option, declare the whole sum secured by this Deed of Trust, with interest thereon, to be immediately due and payable, or Beneficiary may, at Beneficiary's option, pay that amount or portion of such taxes as renders the indebtedness secured hereby unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful and nonusurious portion or balance of said taxes.

7.5.  **Notice of Construction.** Trustor shall notify Beneficiary at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Beneficiary furnish to Beneficiary advance assurances satisfactory to Beneficiary that Trustor can and will pay the cost of such improvements.

7.6.  **Payments Made by Beneficiary.** Trustor shall repay to Beneficiary all sums, with interest thereon as hereafter provided, which at any time may be paid or advanced by Beneficiary for the payment of insurance, taxes, assessments, governmental, municipal, or other charges or impositions, title searches, title reports or abstracts, any obligation secured by a prior lien upon or prior interest in the Property and any other advances made by Beneficiary which are the responsibility of Trustor, to maintain this Trust Deed as a valid and subsisting lien upon the Property and to preserve and protect Beneficiary's, Trustee's or Trustor's interest therein or hereunder. All such advances shall be wholly optional on the part of

4

OCT-1-200~~Case~~ ~~d0-02251~~   Doc 1   Filed 03/25/10   Entered 03/25/10 ~~47:31:23~~3   Desc Main ~~5/16~~
Document     Page 39 of 50

; ENT **110864:2008** PG 5 of 17

Beneficiary, and Trustor's obligation to repay the same, with interest, to Beneficiary shall be secured by the lien of this Trust Deed. The amount of each such advance shall, for the period during which it remains unpaid and both before and after judgment, bear interest at the rate of eighteen percent (18%) per annum until paid.

8. <u>Property Damage Insurance</u>. The following provisions relating to insuring the Property are a part of this Deed of Trust:

8.1. <u>Maintenance of Insurance</u>. Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Beneficiary. Trustor shall also procure and maintain comprehensive general liability insurance insuring against any and all liability of Trustor or claims of liability of Trustor arising out of, occasioned by or resulting from any accident or otherwise resulting in or about the Trust Property and the adjoining streets, sidewalks and passageways, in a minimum single limit combined amount of [$_____] for death, bodily injury and property damage (including blanket contractual liability insurance, garage liability, innkeeper's liability, products liability and elevator liability, if applicable), and Beneficiary being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain "All-Risk" coverage policy of fire and hazard insurance (non-reporting form), including flood, earthquake and "The Replacement Cost" Endorsement with respect to the Trust Property, which insurance policy shall contain an agreed amount endorsement and be in an aggregate amount not less than 100% of the agreed upon full insurable replacement value of the Trust Property. Business interruption and/or loss of rental insurance coverage, as applicable, naming Beneficiary as payee, sufficient to pay, during the period of interruption or loss, a substantial portion of normal operating profits of the Trust Property. Boiler and machinery insurance covering pressure vessels, air tanks, boilers, machinery, pressure piping, heating, air conditioning and elevator equipment in such amounts as the Mortgagee shall reasonably require from time to time, provided that the Trust Property contains equipment of such nature. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Beneficiary and issued by a company or companies reasonably acceptable to Beneficiary. Trustor, upon request of Beneficiary, will deliver to Beneficiary from time to time the policies or certificates of insurance in form satisfactory to Beneficiary, including stipulations that coverages will not be cancelled, altered or diminished without at least thirty (30) days prior written notice to Beneficiary. At least thirty (30) days prior to the expiration of any such policy, Trustor shall furnish evidence satisfactory to Beneficiary that such policy has been renewed, replaced, transferred to another carrier or is no longer required by this paragraph. Each insurance policy also shall include an endorsement providing that coverage in favor of Beneficiary will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Beneficiary that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Beneficiary, and to maintain such insurance for the term of the loan.

8.2. <u>Additional Policies</u>. Trustor shall not take out any separate or additional insurance with respect to the Trust Property which is contributing in the event of loss unless it is properly compatible with all of the requirements of this Deed of Trust.

8.3. <u>Application of Proceeds</u>. Trustor shall promptly notify Beneficiary of any loss or damage to the Property. Beneficiary may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Beneficiary's security is impaired, Beneficiary may, at Beneficiary's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Beneficiary elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Beneficiary. Beneficiary shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if

Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Beneficiary has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Beneficiary under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Beneficiary holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

8.4. Trustor's Report on Insurance. Upon request of Beneficiary, however not more than once a year, Trustor shall furnish to Beneficiary a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Beneficiary, have an independent appraiser satisfactory to Beneficiary determine the cash value replacement cost of the Property.

9.  Beneficiary's Expenditures. If any action or proceeding is commenced that would materially affect Beneficiary's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Beneficiary on Trustor's behalf may (but shall not be obligated to) take any action that Beneficiary deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Beneficiary for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Beneficiary to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Beneficiary's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Beneficiary may be entitled upon Default.

10. Warranty; Defense of Title. The following provisions relating to ownership of the Property are a part of this Deed of Trust:

10.1. Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Beneficiary in connection with this Deed of Trust, (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Beneficiary, and (c) any and all obligations Trustor may have incurred in connection with the Property are current and without default.

10.2. Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Beneficiary under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Beneficiary shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Beneficiary's own choice, and Trustor will deliver, or cause to be delivered, to Beneficiary such instruments as Beneficiary may request from time to time to permit such participation.

10.3. Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

10.4. Survival of Representations and Warranties. All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

6

11. Condemnation. The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

11.1. Proceedings. If any proceeding in condemnation is filed, Trustor shall promptly notify Beneficiary in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Beneficiary shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Beneficiary such instruments and documentation as may be requested by Beneficiary from time to time to permit such participation.

11.2. Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Beneficiary may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Beneficiary in connection with the condemnation.

12. Imposition of Taxes, Fees and Charges by Governmental Authorities. The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

12.1. Current Taxes, Fees and Charges. Upon request by Beneficiary, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Beneficiary to perfect and continue Beneficiary's lien on the Real Property. Trustor shall reimburse Beneficiary for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

12.2. Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Beneficiary or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

12.3. Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Beneficiary may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Beneficiary cash or a sufficient corporate surety bond or other security satisfactory to Beneficiary.

13. Security Agreement; Financing Statements. The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

13.1. Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Beneficiary shall have all of the rights or a secured party under the Uniform Commercial Code as amended from time to time. The Trustor hereby grants to Beneficiary a security interest in all furniture, fixtures and equipment and all other machinery, appliances, furnishings, tools and building materials now owned or hereafter acquired by Trustor, and installed or to be installed in or on the Premises and used or to be used in the management or operation of the Trust Property, and all substitutions, replacements, additions and accessions thereto, together with all cash and non-cash proceeds thereof. Trustor shall, and does hereby authorize Beneficiary, on Beneficiary's behalf to, execute, deliver, file and refile any financing statements, continuation statements, or other security agreements that Beneficiary may require from time to time to confirm the lien of this Deed of Trust with respect to such property. Without limiting the foregoing, Trustor hereby irrevocably constitutes and appoints Beneficiary with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and

authority (coupled with an interest) in the place and stead of Trustor and in the name of Trustor or in Beneficiary's own name, for Beneficiary to execute, deliver and file such instruments for and on behalf of Trustor. Notwithstanding any release of any or all of that property included in the Trust Property which is deemed "real property," and proceedings to foreclose this Deed of Trust or execute any sale hereunder, the terms hereof shall survive as a security agreement with respect to the security interest created hereby and referred to above until the repayment or satisfaction in full of the obligations of Trustor as are now or hereafter secured hereby.

13.2. <u>Security Interest</u>. Upon request by Beneficiary, Trustor shall take whatever action is requested by Beneficiary to perfect and continue Beneficiary's security interest in the Rents or fixtures. In addition to recording this Deed of Trust in the real property records, Beneficiary may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement or file separate financing statements. Trustor shall reimburse Beneficiary for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the fixtures from the Property.

13.3. <u>Addresses</u>. The mailing addresses of Trustor (debtor) and Beneficiary (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

14. <u>Further Assurances; Attorney-In-Fact</u>. The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

14.1. <u>Further Assurances</u>. At any time, and from time to time, upon request of Beneficiary, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Beneficiary or to Beneficiary's designee, and when requested by Beneficiary, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Beneficiary may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Beneficiary, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Beneficiary agrees to the contrary in writing, Trustor shall reimburse Beneficiary for all costs and expenses incurred in connection with the matters referred to in this paragraph.

14.2. <u>Attorney-in-Fact</u>. If Trustor fails to do any of the things referred to in the preceding paragraph, Beneficiary may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Beneficiary as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Beneficiary's sole opinion, to accomplish the matters referred to in the preceding paragraph.

15. <u>Full Performance</u>. If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Beneficiary shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Beneficiary's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

16. <u>Indemnification</u>. Trustor hereby agrees to and does hereby indemnify, protect, defend and save harmless Beneficiary and its trustees, officers, employees, agents, attorneys and shareholders (hereinafter referred to as the "Indemnified Parties") from and against any and all losses, damages, expenses or liabilities of any kind or nature and from any suits, claims or demands, including reasonable counsel fees incurred in investigating or defending such claim, suffered by any of them and caused by, relating to, arising out of, resulting from, or in any way connected with this Deed of Trust and the transactions contemplated herein (unless caused by the gross negligence or willful misconduct of the Indemnified Parties), including, without limitation, (i) disputes between any architect, general contractor, subcontractor, materialman or supplier, or on account of any act or omission to

8

act by the Indemnified Parties in connection with this Deed of Trust, or (ii) losses, damages, expenses or liabilities sustained by the Indemnified Parties in connection with any environmental sampling or cleanup of the Trust Property required or mandated by any federal, state or local law, ordinance, rule or regulation. Without limiting the generality of the foregoing, Trustor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses and costs of Remediation (whether or not performed voluntarily), engineers' fees, environmental consultants' fees, and costs of investigation (including but not limited to sampling, testing, and analysis of soil, water, air, building materials and other materials and substances whether solid, liquid or gas) imposed upon or incurred by or asserted against any Indemnified Parties, and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) any presence of any Hazardous Substances (as that term is defined in Section 26 below) in, on, above, or under the Trust Property; (b) any past, present or threatened Release of Hazardous Substances in, on, above, under or from the Trust Property; (c) any activity by Trustor, any person or entity affiliated with Trustor or any tenant or other user of the Trust Property in connection with any actual, proposed or threatened use, treatment, storage, holding, existence, disposition or other Release, generation, production, manufacturing, processing, refining, control, management, abatement, removal, handling, transfer or transportation to or from the Trust Property of any Hazardous Substances at anytime located in, under, on or above the Trust Property; (d) any activity by Trustor, any person or entity affiliated with Trustor or any tenant or other user of the Trust Property in connection with any actual or proposed Remediation of any Hazardous Substances at any time located in, under, on or above the Trust Property, whether or not such Remediation is voluntary or pursuant to court or administrative order, including but not limited to any removal, remedial or corrective action; (e) any past, present or threatened non-compliance or violations of any Applicable Environmental Laws (as that term is define below) or permits issued pursuant to any Applicable Environmental Law in connection with the Trust Property or operations thereon, including but not limited to any failure by Trustor, any person or entity affiliated with Trustor or any tenant or other user of the Trust Property to comply with any order of any governmental authority in connection with any Applicable Environmental Laws; (f) the imposition, recording or filing or the threatened imposition, recording or filing of any Environmental Lien (as that term is defined below) encumbering the Trust Property under any Applicable Environmental Law; (g) any administrative processes or proceedings or judicial proceedings in any way connected with any matter addressed in this Section; (h) any past, present or threatened injury to, destruction of or loss of natural resources in any way connected with the Trust Property, including but not limited to costs to investigate and assess such injury, destruction or loss; (i) any acts of Trustor or other users of the Trust Property in arranging for disposal or treatment, or arranging with a transporter for transport for disposal or treatment, of Hazardous Substances owned or possessed by such Trustor or other users, at any facility or incineration vessel owned or operated by another person or entity and containing such or similar Hazardous Substances; (j) any acts of Trustor or other users of the Trust Property, in accepting any Hazardous Substances for transport to disposal or treatment facilities, incineration vessels or sites selected by Trustor or such other users, from which there is a Release, or a threatened Release of any Hazardous Substance which causes the incurrence of costs for Remediation; (k) any personal injury, wrongful death, or property damage arising under any statutory or common law or tort law theory, including but not limited to damages assessed for the maintenance of a private or public nuisance or for the conducting of an abnormally dangerous activity on or near the Trust Property; and (l) any misrepresentation or inaccuracy in any representation or warranty or material breach or failure to perform any covenants or other obligations pursuant to this Agreement.

17.  Events Of Default.  Each of the following, at Beneficiary's option, shall constitute an Event of Default under this Deed of Trust:

    17.1. Payment Default.  Trustor fails to make any payment when due under the Indebtedness.

    17.2. Other Defaults.  Trustor or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust, the Loan Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Beneficiary and Trustor or Trustor.

    17.3. Compliance Default.  Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Loan Agreement or in any of the Related Documents.

17.4. <u>Default on Other Payments.</u> Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

17.5. <u>Environmental Default.</u> Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

17.6. <u>Default in Favor of Third Parties.</u> Should Trustor or any Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's or any Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust, the Loan Agreement or any of the Related Documents.

17.7. <u>False Statements.</u> Any warranty, representation or statement made or furnished to Beneficiary by Trustor or Trustor or on Trustor's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

17.8. <u>Defective Collateralization.</u> This Deed of Trust, the Loan Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

17.9. <u>Insolvency.</u> The dissolution or termination of Trustor's or Trustor's existences as a charter school under applicable laws of the State of Utah governing charter schools, the insolvency of Trustor or Trustor, the appointment of a receiver for any part of Trustor's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor or Trustor.

17.10.    <u>Creditor or Forfeiture Proceedings.</u> Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or Trustor or by any governmental agency against any property securing the Indebtedness. However, this Event of Default shall not apply if there is a good faith dispute by Trustor or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor or Trustor gives Beneficiary written notice of the creditor or forfeiture proceeding and deposits with Beneficiary monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Beneficiary, in its sole discretion, as being an adequate reserve or bond for the dispute.

17.11.    <u>Breach of Other Agreement.</u> Any breach by Trustor or Trustor under the terms of any other agreement between Trustor or Trustor and Beneficiary that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor or Trustor to Beneficiary, whether existing now or later.

17.12.    <u>Events Affecting Guarantor.</u> Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

17.13.    <u>Adverse Change.</u> A material adverse change occurs in Trustor's or Trustor's financial condition, or Beneficiary believes this prospect of payment or performance of the Indebtedness is impaired.

17.14.    <u>Misrepresentations.</u> Trustor has made any material misrepresentation, or has failed to disclose any material fact, in any written representations and disclosures made by Trustor in order to induce Beneficiary to extend credit as evidenced by the Note or notes and other agreements which this Trust Deed secures;

10

17.15.    Abandonment. Trustor abandons the Property or leaves the same unattended or unprotected.

17.16.    Transfer of Trust Property. In the event that Trustor shall have transferred, caused, or involuntarily suffered or consented, to have been transferred, title to or possession of any interest in the Trust Property, or any part thereof, to any Person without the prior express written consent of Beneficiary.

17.17.    Insecurity. Beneficiary in good faith believes itself insecure.

18. Rights and Remedies on Default. If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Beneficiary may exercise any one or more of the following rights and remedies:

18.1. Election of Remedies. Election by Beneficiary to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Beneficiary's right to declare a default and exercise its remedies.

18.2. Accelerate Indebtedness. Beneficiary shall have the right at its option without notice to Trustor or Trustor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Trustor would be required to pay and charge interest at the rate of eighteen percent (18%) per annum from the date of default until said indebtedness is paid.

18.3. Foreclosure. With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Beneficiary shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

18.4. UCC Remedies. With respect to all or any part of the Personal Property, Beneficiary shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

18.5. Collect Rents. Beneficiary shall have the right, without notice to Trustor or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Beneficiary's costs, against the Indebtedness, in furtherance of this right, Beneficiary may require any tenant or other user of the Property to make payments of rent or use fees directly to Beneficiary. If the Rents are collected by Beneficiary, then Trustor irrevocably designates Beneficiary as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Beneficiary in response to Beneficiary's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Beneficiary may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

18.6. Appoint Receiver. Beneficiary shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Trustor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Beneficiary shall not disqualify a person from serving as a receiver.

18.7. Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Beneficiary otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Beneficiary or the purchaser of the Property and shall, at Beneficiary's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Beneficiary.

18.8. Other Remedies. Trustee or Beneficiary shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

18.9. Notice of Sale. Beneficiary shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

18.10.    Sale of the Property. To the extent permitted by applicable law, Trustor and Trustor hereby waives any and all rights to have the Property marshaled. In exercising its rights and remedies, the Trustee or Beneficiary shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Beneficiary shall be entitled to bid at any public sale on all or any portion of the Property.

18.11.    Attorneys' Fees; Expenses. If Beneficiary institutes any suit or action to enforce any of the terms of this Deed of Trust, Beneficiary shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Beneficiary incurs that in Beneficiary's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Beneficiary's reasonable attorneys' fees and Beneficiary's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

18.12.    Rights of Trustee. Trustee shall have all of the rights and duties of Beneficiary as set forth in this section.

19. Powers and Obligations of Trustee. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

19.1. Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Beneficiary and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Beneficiary under this Deed of Trust.

19.2. Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

19.3. Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Beneficiary shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

19.4. Successor Trustee. Beneficiary, at Beneficiary's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Beneficiary and recorded in the office of the recorder of Utah County, State of Utah. The instrument shall contain, in addition to all other matters required by state law, the names of the original Beneficiary, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Beneficiary or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the

12

title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

20. <u>Cumulative Rights</u>. The rights and remedies herein expressed to be vested in or conferred upon Beneficiary shall be cumulative and shall be in addition to and not in substitution for or in derogation of the rights and remedies conferred by any applicable law. The failure, at any one or more times, of Beneficiary to assert the right to declare the principal indebtedness under the Loan Agreement, or the Loan Documents which are the subject of the the granting of any extension or extensions of time of payment thereof either to the maker or to any other Person, or taking of other or additional security for the payment thereof, or releasing any security, or changing any of the terms of this Deed of Trust, the Loan Agreement, or any other obligation accompanying this Deed of Trust, or waiver of or failure to exercise any right under any covenant or stipulation herein contained shall not in any way affect this Deed of Trust nor the rights of Beneficiary hereunder nor operate as a release from any personal liability upon the Loan Agreement, or other obligation accompanying this Deed of Trust, nor under any covenant or stipulation therein contained, nor under any agreement assuming the payment of hereunder, under the Loan Agreement or obligations.

21. <u>Notices</u>. Unless otherwise provided by applicable law, any notice required to be given under this Deed of Trust or required by law, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Deed of Trust, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Beneficiary's address, as shown near the beginning of this Deed of Trust. Notwithstanding any other provision of this Deed of Trust, all notices given under Utah Code Ann. Section 57-1-26 shall be given as required therein. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Beneficiary informed at all times of Trustor's current address. Unless otherwise provided by applicable law, if there is more than one Trustor, any notice given by Beneficiary to any Trustor is deemed to be notice given to all Trustors.

22. <u>Further Assurances</u>. The parties hereto agree to do all things deemed necessary by Beneficiary in order to fully document the loan evidenced by the Loan Agreement, this Deed of Trust and any related agreements, and will fully cooperate concerning the execution and delivery of security agreements, stock power, instructions and/or other documents pertaining to any collateral intended to secure the Indebtedness. The undersigned agree to assist in the cure of any defects in the execution, delivery or substance of the Loan Agreement and related agreements, and in the creation and perfection of any liens, security interests or other collateral rights securing the Loan Agreement and the Indebtedness.

23. <u>Consent to Sell Loan</u>. The parties hereto agree: (a) Beneficiary may sell or transfer all or part of this loan to one or more purchasers, whether related or unrelated to Beneficiary; (b) Beneficiary may provide to any purchaser, or potential purchaser, any information or knowledge Beneficiary may have about the parties or about any other matter relating to this loan obligation, and the parties waive any rights to privacy it may have with respect to such matters; (c) the purchaser of a loan will be considered its absolute owner and will have all the rights granted under the loan documents or agreements governing the sale of the loan; and (d) the purchaser of a loan may enforce its interests irrespective of any claims or defenses that the parties may have against Beneficiary.

24. <u>Facsimile and Counterpart</u>. This document may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document. An electronic transmission or other facsimile of this document or any related document shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

25. <u>Miscellaneous Provisions</u>. The following miscellaneous provisions are a part of this Deed of Trust:

25.1. Amendments. This Deed of Trust, together with the Loan Agreement and any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

25.2. Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

25.3. Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Beneficiary in any capacity, without the written consent of Beneficiary.

25.4. Governing Law. This Deed of Trust will be governed by federal law applicable to Beneficiary and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Beneficiary in the State of Utah.

25.5. Joint and Several Liability. All obligations of Trustor and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Trustor shall mean each and every Trustor. This means that each Trustor and Trustor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Beneficiary to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

25.6. No Waiver by Beneficiary. Beneficiary shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Beneficiary. No delay or omission on the part of Beneficiary in exercising any right shall operate as a waiver of Beneficiary's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Beneficiary, nor any course of dealing between Beneficiary and Trustor, shall constitute a waiver of any of Beneficiary's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Beneficiary is required under this Deed of Trust, the granting of such consent by Beneficiary in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Beneficiary.

25.7. Severability. If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

25.8. Successors and Assigns. Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Beneficiary, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the indebtedness.

25.9. Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

26. Definitions. The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural,

14

and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

26.1. <u>Beneficiary.</u> The word "Beneficiary" means the ROST INVESTMENTS, LLC and its successors and assigns.

26.2. <u>Trustor.</u> The word "Trustor" means SEAN FOOTE, individually.

26.3. <u>Deed of Trust.</u> The words "Deed of Trust" mean this Deed of Trust among Trustor, Beneficiary, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

26.4. <u>Default.</u> The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

26.5. <u>Environmental Laws.</u> The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

26.6. <u>Event of Default.</u> The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

26.7. <u>Guarantor.</u> The word "Guarantor" means the guarantor, surety, or accommodation party, if any, of any or all of the Indebtedness.

26.8. <u>Hazardous Substances.</u> The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

26.9. <u>Improvements.</u> The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

26.10.  <u>Indebtedness.</u> The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Loan Agreement, the Deed of Trust or the Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Loan Agreement, the Deed of Trust or the Related Documents and any amounts expended or advanced by Beneficiary to discharge Trustor's obligations or expenses incurred by Trustee or Beneficiary to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

26.11.  <u>Loan Agreement.</u> The term "Loan Agreement" means the Loan Agreement, dated as of April ___, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the Loan Agreement and the Related Documents.

26.12.  <u>Personal Property.</u> The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all

15

substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

26.13.    Property. The word "Property" means collectively the Real Property and the Personal Property.

26.14.    Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

26.15.    Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

26.16.    Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

26.17.    Trustee The word "Trustee" means Stephen Quesenberry
and any substitute or successor trustees.

26.18.    Trustor. The word "Trustor" has the same meaning as "Trustor".

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.**

TRUSTOR
BART J. BROCKBANK

NANETTE G. BROCKBANK

**ACKNOWLEDGMENT**

STATE OF UTAH    )
                 :ss.
COUNTY OF UTAH   )

On this _____ day of _____, 2007, before me, the undersigned Notary Public, personally appeared Bart J. Brockbank and known to me to be individual that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the individual, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the corporation.

By_____    Residing at_____

Notary Public in and for the State of Utah    My commission expires_____

16